# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CENTRAL DIVISION

| | |
|---|---|
| AMY R. HASLEY,<br><br>    Plaintiff,<br><br>vs.<br><br>CAROLYN W. COLVIN, Acting<br>Commissioner of Social Security,<br><br>    Defendant. | No. C14-3064-LTS<br><br>**MEMORANDUM<br>OPINION AND ORDER** |

_____

Plaintiff Amy R. Hasley seeks judicial review of a final decision of the Commissioner of Social Security (Commissioner) denying her applications for Social Security Disability benefits (DIB) and Supplemental Security Income benefits (SSI) under Titles II and XVI of the Social Security Act, 42 U.S.C. § 401 *et seq*. (Act). Hasley contends that the administrative record (AR) does not contain substantial evidence to support the Commissioner's decision that she was not disabled during the relevant time period. For the reasons that follow, the Commissioner's decision will be affirmed.

## I.    *FACTUAL AND PROCEDURAL BACKGROUND*

Hasley was born in 1982 and alleges that she became disabled on November 27, 2006. AR 257. She has obtained a GED and completed at least one year of college. AR 268, 338, 1003. Hasley previously filed applications for DIB and SSI on December 31, 2007. AR 20-21, 118-21, 257-58. The prior applications were denied through December 9, 2008. AR 20-21. The Administrative Law Judge (ALJ) limited consideration in this matter to the time period commencing December 10, 2008, on the basis of *res judicata*, in conformity with 20 C.F.R. §§ 404.957(c)(1) and 416.1457(c)(1). *Id*.

Hasley has held several jobs through 2009 and 2010, notably as a salesperson at a retail store and carwash attendant. She filed her present applications for DIB and SSI on April 7, 2010, and April 22, 2010, respectively. AR 201-12. In her Disability Report, she stated that she suffered from the following illnesses, injuries, or conditions that limit her ability to work: migraine headaches, bipolar mania, post-partum depression, severe depression, and dependent personality disorder. AR 262. Hasley's claims were denied initially and upon reconsideration. AR 223-24. Hasley then filed a written request for a hearing before an ALJ. AR 155.

On February 28, 2013, ALJ Jo Ann Draper held a video hearing, during which Hasley was represented by counsel. Hasley and a vocational expert (VE) testified. AR 50-102. On April 10, 2013, the ALJ issued a decision in which she found that Hasley was not disabled under Sections 216(i), 223(d), or 1614(a)(3)(A) of the Act. AR 20, 38. The Appeals Council denied review of the ALJ's decision December 3, 2014, meaning the ALJ's decision stands as the final decision of the Commissioner. AR 1-12. On October 27, 2014, Hasley filed a Complaint (Doc. No. 3) in this court, seeking review of the Commissioner's decision.[1] The parties have briefed the issues and the matter is now fully submitted.

## II. DISABILITY DETERMINATIONS AND THE BURDEN OF PROOF

A disability is defined as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), *accord* 1382c(a)(3)(A);

---

[1] This case was initially assigned to Senior United States District Judge Donald E. O'Brien. It was reassigned to United States District Judge Mark W. Bennett on August 20, 2015, after Judge O'Brien passed away. The case was then reassigned to me on February 17, 2016, upon my appointment as a United States District Judge.

20 C.F.R. §§ 404.1505, 416.905. A claimant has a disability when, due to his physical or mental impairments, the claimant "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). If the claimant is able to do work which exists in the national economy but is unemployed because of inability to get work, lack of opportunities in the local area, economic conditions, employer hiring practices or other factors, the ALJ will still find the claimant not disabled. 20 C.F.R. §§ 404.1566(c)(1)-(8), 416.966(c)(1)-(8).

To determine whether a claimant has a disability within the meaning of the Act, the Commissioner follows the five-step sequential evaluation process outlined in the regulations. *Id.* §§ 404.1520, 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity (SGA), then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). "Substantial" work activity involves physical or mental activities. "Gainful" activity is work done for pay or profit. 20 C.F.R. §§ 404.1572(a), 404.1572(b).

Second, if the claimant is not engaged in SGA, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities." *Dixon v. Barnhart*, 353 F.3d 602, 605 (8th Cir. 2003). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707; *see* 20 C.F.R. §§ 404.1520(c), 404.1521(a), 416.920(c), 416.921(a).

The ability to do basic work activities is defined as having "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting,

lifting, pushing, pulling, reaching, carrying or handling; (2) capacities for seeing, hearing and speaking; (3) understanding, carrying out and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers and usual work situations; and (6) dealing with changes in a routine work setting. *Id*. §§ 404.1521(b)(1)(6), 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). "The sequential evaluation process may be terminated at Step Two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on her ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

Third, if the claimant has a severe impairment, then the Commissioner will determine its medical severity. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled regardless of age, education and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's residual functional capacity (RFC) and the demands of her past relevant work. If the claimant cannot do her past relevant work, then she is considered disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(4), 416.920(a)(4)(iv), 416.945(a)(4). Past relevant work is any work the claimant has done in the fifteen years prior to their application, that was substantial gainful activity and lasted long enough for the claimant to learn how to do it. *Id*. § 416.960(b)(1). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); s*ee* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The claimant is responsible for providing the evidence the Commissioner will use to determine claimant's RFC, but the

Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *Id*. If a claimant retains enough RFC to perform past relevant work, then the claimant is not disabled. *Id*. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to show that there is other work that the claimant can do, given the claimant's RFC as determined at Step Four, and his or her age, education, and work experience. *See Bladow v. Apfel*, 205 F.3d 356, 358-59 n.5 (8th Cir. 2000). The Commissioner must show not only that the claimant's RFC will allow him to make the adjustment to other work, but also that other work exists in significant numbers in the national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can make the adjustment, then the Commissioner will find the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). At Step Five, the Commissioner has the responsibility of developing the claimant's complete medical history before making a determination about the existence of a disability. *Id*. §§ 404.145(a)(3), 416.945(a)(3). The burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

If after these five steps the ALJ has determined the claimant is disabled, but there is medical evidence of substance use disorders, the ALJ must decide if that substance use is a contributing factor material to the determination of disability. 42 U.S.C. §§ 423(d)(2)(C). The ALJ must then evaluate the extent of the claimant's limitations without the substance use. *Id*. If the limitations would not be disabling, then the disorder is a contributing factor material to determining disability and the claimant is not disabled. 20 C.F.R. §§ 404.1535, 416.935.

## III.  THE ALJ'S FINDINGS

The ALJ made the following findings:

(1) The claimant meets the insured status requirements of the Social Security Act through December 31, 2014.

(2) The claimant has not engaged in substantial gainful activity since December 10, 2008 (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

(3) The claimant has the following severe impairments: bipolar disorder, NOS; migraines; personality disorder versus borderline personality disorder; obesity, with a BMI of 35; bilateral mild medial narrowing of the knees; somatic dysfunction (20 CFR 404.1520(c) and 416.920(c)).

(4) The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

(5) After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can lift and carry 20 pounds occasionally and 10 pounds more frequently. She can stand and walk 6 hours of an 8 hour workday. She can sit 6 hours of an 8 hour workday. She can occasionally climb, balance, stoop, kneel, crouch, and crawl. She should never climb ropes, ladders or scaffolds. She is precluded from performing highly detailed, highly complex job tasks. She may have occasional interaction with the public and coworkers. She should not work at a production rate pace.

(6) The claimant is capable of performing past relevant work as a carwash attendant. This work does not require the performance of work-related activities

6

>   precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).
>
> (7) The claimant has not been under a disability, as defined in the Social Security Act, from December 10, 2008, through the date of this decision (20 CFR 404.1520(f) and (g), and 516.920(f) and (g)).

AR 22-34.

## IV.   *THE SUBSTANTIAL EVIDENCE STANDARD*

The Commissioner's decision must be affirmed "if it is supported by substantial evidence on the record as a whole." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis*, 353 F.3d at 645. The Eighth Circuit Court of Appeals explains the standard as "something less than the weight of the evidence and [that] allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994).

In determining whether the Commissioner's decision meets this standard, the court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Wester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). The court considers both evidence that supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

In evaluating the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989). The court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)). Nor does the court "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (citing *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if, after reviewing the evidence, the court finds it "possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)). This is true even in cases where the court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). The court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984); *see Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion.").

## V. DISCUSSION

Hasley contends that the ALJ's decision is not supported by substantial evidence because (a) the Step Four finding that Hasley could return to past relevant work was made in error and (b) the ALJ's RFC assessment was flawed because the ALJ failed to fully develop the record and failed to account for Hasley's alleged need for frequent absences. I will address the first argument only briefly, as I have concluded that even if Hasley's position is correct, the ALJ's ultimate decision is supported by substantial evidence.

## A. *Past Relevant Work*

In determining whether a claimant's past work qualifies as "past relevant work," an ALJ will normally only consider work that meets the following requirements: (1) the claimant performed the work in the prior fifteen years; (2) the work lasted long enough for the claimant to learn to do it; and (3) the work was SGA. *See* 20 C.F.R. §§ 404.1560(b), 404.1565(a), 416.960(b), 416.965(a); *Terrell v. Apfel*, 147 F.3d 659, 661 (8th Cir. 1998); Social Security Ruling (SSR) 82-62 (1980). It is inconsistent for an ALJ to (a) find at Step One that a particular job did not reach the level of SGA but (b) make a Step Four finding that the same job may qualify as past relevant work. *See Mueller v. Astrue*, 561 F.3d 837, 841 (8th Cir. 2009) (holding that because the ALJ found at Step One that the claimant's prior work was not SGA, substantial evidence did not support the ALJ's Step Four finding that she had past relevant work as a substitute teacher); *see also Buckner v. Apfel*, 213 F.3d 1006, 1013 (8th Cir. 2000) (remanding a determination of non-disability at Step Four because, in part, the ALJ specifically found at Step One that the claimant had not engaged in SGA at any time relevant to the ALJ's decision).

Here, the record indicates that Hasley earned income as a carwash attendant at Specialty Car Wash Ltd. during the years 2007, 2008 and 2009. AR 215-16, 220, 262, 271, 430. At Step One, the ALJ found that Hasley's work activity during the adjudication period (which began December 10, 2008) did not constitute SGA. AR 23. However, at Step Four the ALJ found Hasley's work as a carwash attendant to be past relevant work that Hasley was able to perform. AR 36. Other than referencing the VE's summary of past relevant work (AR 430), the ALJ did not explain why Hasley's work as a carwash attendant, which was deemed to not constitute SGA at Step One, nonetheless qualified as

9

past relevant work at Step Four.[2] An explanation may exist. For example, Hasley may have performed the work at the SGA level *before* the adjudication period – although the record seems to suggest otherwise.[3] However, the ALJ's failure to address the apparent inconsistency is troubling.

Due to the unexplained contradiction between the ALJ's Step One and Step Four findings, I conclude that substantial evidence does not support the ALJ's Step Four non-disability determination. If the ALJ's analysis had ended at Step Four, remand would be required. However, the ALJ proceeded to Step Five and made an alternative finding of non-disability at that step. AR 37. I will address that finding next.

B.   *The RFC Determination and Step Five Adjudication*

The ALJ found that despite Hasley's various impairments, she retained the RFC to perform light work with certain limitations. AR 25. The limitations included: (a) Hasley can lift and carry 20 pounds occasionally and 10 pounds more frequently; (b) she can stand and walk 6 hours of an 8 hour workday and can sit 6 hours of an 8 hour workday; (c) she can occasionally climb, balance, stoop, kneel, crouch and crawl; (d) she should never climb ropes, ladders or scaffolds; (e) she is precluded from performing highly detailed, highly complex job tasks; (f) she may have occasional interaction with the public and coworkers and (g) she should not work at a production rate pace. *Id.* The ALJ posed hypothetical questions to the VE based on this RFC and Hasley's age, education and work experience. AR 98-100.

---

[2] While the VE testified at the hearing, she was not asked to discuss her finding that the carwash attendant position was past relevant work. AR 90-101.

[3] Hasley's earnings from the carwash job were below the SGA earnings guidelines set forth in 20 C.F.R. § 404.1574(b)(3). This does not conclusively establish that the job did not rise to the level of SGA. *See Pickner v. Sullivan*, 985 F.2d 401, 403 (8th Cir. 1991); *see also* 20 C.F.R. § 404.1574(a)(1). However, the ALJ did not explain how Hasley's work as a carwash attendant may have reached SGA status despite Hasley's low earnings from that position.

In response, the VE testified that the hypothetical person described by the ALJ could perform Hasley's prior job as a carwash attendant. AR 99. The VE also testified that the individual could perform other light, unskilled jobs such as laundry sorter, housekeeper and pricer. *Id.* at 99-100. The VE stated that thousands of each such jobs exist in the national economy. *Id.* Based on the VE's testimony, the ALJ made a Step Five finding that Hasley could make "a successful adjustment to other work that exists in significant numbers in the national economy. AR 37. As such, the ALJ found that Hasley was not disabled. *Id.*

### 1. *Hasley's Arguments*

Hasley argues that the ALJ's alternative, Step Five analysis is flawed because the ALJ did not fully and fairly develop the record by seeking treating or examining source opinion concerning the claimant's RFC. While Hasley cites *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000), and *Stalkup v. Astrue*, 662 F. Supp. 2d 1122, 1131-32 (S.D. Iowa 2009), her brief is otherwise undeveloped on this point. Doc. No. 12 at 32-33. So far as I can tell, Hasley seems to argue that the ALJ should have ordered an additional consultative examination to fully develop the record.

Additionally, Hasley argues that the ALJ "failed to even address the issue of whether the claimant would be absent from work, if so, how often and how long." Doc No. 12 at 33. Hasley further states, "[a] proper hypothetical question must take into account the uncontroverted fact that a claimant will be absent from the workplace an inordinate amount of time due to his [sic] migraine headaches." *Id.* 33-34. Hasley then details the severity of headaches and migraines that she reported to various sources of medical treatment and cites several cases for the proposition that frequent absences due to migraine headaches support a finding of disability. *Id.* (citing *Baker v. Apfel*, 159 F.3d 1140, 1146 (8th Cir. 1998); *Stalkup v. Astrue*, 662 F. Supp. 2d 1122, 1133 (S.D. Iowa 2009); *Swanson v. Astrue*, 2010 WL 3118785, at *19 (D. Minn. May 3, 2010);

*Orr v. Chater*, 956 F. Supp. 861, 874 (N.D. Iowa 1997)). Finally, Hasley argues that the ALJ failed to consider her Global Assessment of Functioning (GAF) scores.[4]

## 2. *Applicable Standards*

At Step Five of the sequential evaluation process, the claimant's RFC must be expressed in terms of, or related to, the various exertional categories when the ALJ adjudicator determines whether there is other work the individual can do. SSR 96-8p. However, in order for an individual to do a full range of work at a given exertional level, the individual must be able to perform substantially all of the exertional and nonexertional functions required in work at that level. *Id.* Therefore, it is necessary to assess the individual's capacity to perform each of these functions in order to decide which exertional level is appropriate and whether the individual is capable of doing the full range of work contemplated by the exertional level. *Id.*

An ALJ has an independent duty to fully and fairly develop the record. *See Cox v. Astrue*, 495 F.3d 614, 618 (8th Cir. 2007); *Smith v. Barnhart*, 435 F.3d 926, 930 (8th Cir. 2006) (noting that the non-adversarial nature of administrative hearings make it incumbent upon the ALJ to fully and fairly develop the record.). "There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis." *Mouser v. Astrue*, 545 F.3d 634, 639 (8th Cir. 2008) (citation omitted). The ALJ must be able to rely on some medical evidence that describes the claimant's "functional limitations with sufficient generalized clarity to allow for understanding of how those limitations function in a work

---

[4] A GAF score represents a clinician's judgment of an individual's overall ability to function in social, school, or occupational settings, not including impairments due to physical or environmental limitations. *See American Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders* 34 (4th ed.) (DSM-IV). For example, a GAF score of 51-60 indicates the individual has moderate symptoms (*e.g.*, flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (*e.g.*, few friends, conflicts with peers or co-workers). *Id.*

environment." *Cox*, 495 F.3d at 620 n.6. If the medical evidence on the record is sufficient to make a disability determination, the ALJ need not order additional medical examinations to develop the record further. *See Kamann v. Colvin*, 721 F.3d 945, 950 (8th Cir. 2013).

Although the RFC assessment is based on medical evidence, it is ultimately an administrative decision reserved to the Commissioner. *See Cox*, 495 F.3d at 619-20 (8th Cir. 2007). Thus, "[A]n ALJ is permitted to issue a decision without obtaining additional medical evidence so long as other evidence in the record provides a sufficient basis for the ALJ's decision." *Agan v. Astrue*, 922 F. Supp. 2d 730, 755 (N.D. Iowa 2013) (quoting *Naber v. Shalala*, 22 F.3d 186, 189 (8th Cir. 1994)); *Barrett v. Shalala*, 38 F.3d 1019, 1023 (8th Cir. 1994) ("The ALJ is required to order medical examinations and tests only if the medical records presented to him do not give sufficient medical evidence to determine whether the claimant is disabled."). The ALJ does not have to "seek additional clarifying statements from a treating physician unless a crucial issue is undeveloped." *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

Generally, a consultative examination will not be ordered until every reasonable effort has been made to obtain evidence from a claimant's own medical sources. 20 C.F.R. § 416.912(e). The regulations do not require a consultative examination for every alleged impairment. *Matthews v. Bowen*, 879 F.2d 422, 424 (8th Cir. 1989). However, a consultative examination may be ordered "to try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow us to make a determination or decision on [a] claim." 20 C.F.R. § 416.919(a). Examples include: (a) when the additional evidence needed is not contained in the records of the claimant's medical sources, (b) when the evidence that may have been available from a treating source can no longer be obtained for reasons beyond the claimant's control, (c) when the evidence needed is highly technical or specialized medical evidence that is not available from the claimant's treating source, or (d) when there is an indication of a change in the claimant's condition and the current severity of the impairment is not established. *Id.*

Accordingly, the issue before me is whether the record before the ALJ was underdeveloped, such that the ALJ had a duty to gather additional medical evidence before making an RFC determination. In *Nevland,* an ALJ made a Step Five determination that a claimant who could not perform past relevant work could, nonetheless, perform various jobs identified by a VE. *Id.* at 857. Various non-treating and non-examining physicians had reviewed the claimant's records and provided opinions about the claimant's RFC, which the ALJ then used in formulating hypothetical questions to a VE. *Id.* at 858. The Eighth Circuit began its analysis as follows:

> In our circuit it is well settled law that once a claimant demonstrates that he or she is unable to do past relevant work, the burden of proof shifts to the Commissioner to prove, first that the claimant retains the residual functional capacity to do other kinds of work, and, second that other work exists in substantial numbers in the national economy that the claimant is able to do. *McCoy v. Schweiker*, 683 F.2d 1138, 1146–47 (8th Cir. 1982)(en banc); *O'Leary v. Schweiker*, 710 F.2d 1334, 1338 (8th Cir. 1983). It is also well settled law that it is the duty of the ALJ to fully and fairly develop the record, even when, as in this case, the claimant is represented by counsel. *Warner v. Heckler*, 722 F.2d 428, 431 (8th Cir. 1983).

*Id.* at 857. The court then noted that while the record contained many treatment notes, none of the treating physicians provided opinions concerning the claimant's RFC. *Id.* at 858. The court then stated:

> In the case at bar, there is no *medical* evidence about how Nevland's impairments affect his ability to function now. The ALJ relied on the opinions of non-treating, non-examining physicians who reviewed the reports of the treating physicians to form an opinion of Nevland's RFC. In our opinion, this does not satisfy the ALJ's duty to fully and fairly develop the record. The opinions of doctors who have not examined the claimant ordinarily do not constitute substantial evidence on the record as a whole. *Jenkins v. Apfel,* 196 F.3d 922, 925 (8th Cir.1999). Likewise, the testimony of a vocational expert who responds to a hypothetical based on such evidence is not substantial evidence upon which to base a denial of benefits. *Id*. In our opinion, the ALJ should have sought such an opinion from Nevland's treating physicians or, in the alternative, ordered consultative examinations, including psychiatric and/or psychological evaluations to assess Nevland's mental and physical residual functional

capacity. As this Court said in *Lund v. Weinberger*, 520 F.2d 782, 785 (8th Cir.1975): "An administrative law judge may not draw upon his own inferences from medical reports. *See Landess v. Weinberger*, 490 F.2d 1187, 1189 (8th Cir.1974); *Willem v. Richardson*, 490 F.2d 1247, 1248–49 n. 3 (8th Cir.1974)."

*Id.* (emphasis in original). As I explained in a prior case:

> *Nevland* holds that the Commissioner "ordinarily" cannot meet this burden without an opinion from at least one doctor who actually examined the claimant. *Id.* at 858. Of course, "ordinarily" does not mean "never." Judge Bennett recently noted that *Nevland* "does not compel remand in every case in which the administrative record lacks a treating doctor's opinion." *Hattig v. Colvin*, No. C 12–4092 MWB, 2013 WL 6511866, at *10 (N.D. Iowa Dec. 12, 2013). Thus, if other medical evidence in the record clearly establishes a claimant's RFC to do other work, and to function in the workplace, the absence of an opinion from examining physicians may not require remand. Id. at *11 (citing *Nevland*, 204 F.3d at 858).

*Kruger v. Colvin*, No. C13–3036–MWB, 2014 WL 1584411, at *10 (N.D. Iowa Apr. 21, 2014).

### 3. *Analysis*

Having carefully considered the entire record, I find no merit to Hasley's argument that the ALJ failed to fully and fairly develop the record. The administrative record includes 57 medical exhibits totaling over a thousand pages. AR 433-1450. The ALJ devoted significant time and attention to summarizing those records in the course of formulating Hasley's RFC. AR 25-36. With regard to mental impairments, the ALJ cited numerous records indicating that Hasley's mental functioning was improved, hopeful, more proactive, and functional. AR 30. For example, the ALJ cited an April 2010 mental status examination that was largely normal and which showed that Hasley had coherent thought processes and normal attention and concentration. AR 30, 804-09. A consultative mental examination in August 2011 showed that Hasley was oriented, had

15

reasonably intact memory, and intact attention and concentration. AR 32, 1000-06. The consultative examiner found that Hasley's intelligence and memory were adequate for entry level competitive employment in a repetitive work environment. AR 33, 1006. The examiner also reported that Hasley was strongly motivated to obtain disability benefits and encouraged the reviewing examiners to carefully review all documents. *Id*. The ALJ summarized and discussed many largely-normal mental status examinations and other evidence supporting the RFC assessment. AR 34-35.

As for Hasley's migraine headaches, much of her argument relies on her own subjective reports to substantiate her allegations of disabling migraines and mental limitations. Doc. No. 12 at 34-35. However, she does not expressly challenge the ALJ's credibility assessment, through which the ALJ determined that Hasley's allegations were not entirely credible. AR 26. The ALJ observed, for example, that on December 8, 2010, Hasley alleged having headaches for two months but had not complained of having any headaches less than one month earlier. AR 27, 923. Likewise, the ALJ noted numerous occasions in which Hasley alleged that her headaches caused pain at a level 8 or 9 on a scale of 10 but was observed to be in no acute distress. AR 28, 934-961, 1135-1137, 1240. The ALJ also noted that Hasley's own treating physician wrote a letter dated May 12, 2011, in which he indicated that her migraine headaches would not cause "any significant work restrictions." AR 28, 987.

In addition to the medical evidence and opinions discussed above, the ALJ addressed opinions provided by state agency consulting physicians and psychologists who reviewed Hasley's records. AR 30, 35. In short, the ALJ did not fail to fully and fairly develop the record. Instead, the record contains contemporaneous medical notes and records that shed light on Hasley's symptoms and impairments, opinion evidence from medical sources who treated and/or examined Hasley and opinion evidence from consultative sources. The ALJ provided detailed, well-founded reasons for the weight he gave to the opinions of record. Based on my review of the entire record, I find that substantial evidence supports the ALJ's findings as to Hasley's physical and mental RFC.

Finally, I will address Hasley's argument concerning GAF scores. She states that "it is unseemly for the ALJ to ignore GAF scores that are 50 or below. . . . [and] the ALJ owes it to the claimant to explain why GAF scores at 50 or below do not lead to a finding of disability." Doc. No. 14 at 5. However, the Commissioner has expressly declined to endorse the GAF scale for "use in the Social Security and SSI disability programs," and has indicated that GAF scores have no "direct correlation to the severity requirements in our mental disorders listings." *See Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury*, 65 Fed Reg. 50,746, 50,764-65, 2000 WL 1173632 (August 21, 2000).[5] While GAF scores are relevant and should be considered, they are "not essential to the accuracy of an RFC determination." *Earnheart v. Astrue*, 484 Fed. Appx. 73, 75 (8th Cir. 2012) (citing *Halverson v. Astrue*, 600 F.3d 922, 930-31 (8th Cir. 2010)).

The Eighth Circuit has found that GAF scores below 50 can demonstrate moderate to complete impairment in work-related skills. *Pate-Fires v. Astrue*, 564 F.3d 935, 947 (8th Cir. 2009). In *Pate-Fires*, the claimant's GAF scores ranged from 10 to 58, with scores above 50 only four out of twenty-one times over in a six-year period. *Id.* at 944. The court noted that the history of GAF scores at 50 or below, taken as a whole, indicated the claimant had serious symptoms and/or impairments in social, occupational or school functioning, which the ALJ failed to discuss. *Id.* The court found that this evidence supported the claimant's treating physician's opinion that she was not capable of participating in gainful employment and held that the ALJ erred by failing to consider the claimant's history of GAF scores below 50. *Id.*

---

[5] The Commissioner points out that the fifth edition of the Diagnostic and Statistical Manual of Mental Disorders (DSM-V), released in May 2013, no longer uses GAF scores to rate an individual's level of functioning. *See Rayford v. Shinseki*, No. 12-0042, 2013 WL 3153981, at *1 n.2 (Vet. App. June 20, 2013) (citing DSM-V 16 (5th ed. 2013)). Use of the GAF scale was abandoned because of, *inter alia*, "its conceptual lack of clarity" and "questionable psychometrics in routine practice." *Id.*

Here, the ALJ demonstrated that she had considered Hasley's GAF scores by providing a detailed summary of Hasley's treatment records, which included those scores. AR 25-36. The ALJ was not required to discuss each GAF score. *See Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered."). Moreover, of the thirty GAF scores in the administrative record during the adjudication period, only nine were below 50. Doc. No. 12 at 36-37. The administrative record before the ALJ did not show a consistent history of GAF scores below 50, as in *Pate-Fires*. In any event, the ALJ's comprehensive review of Hasley's medical evidence satisfied the obligation to consider Hasley's GAF scores.

## VI. CONCLUSION

After a thorough review of the entire record and in accordance with the standard of review I must follow, I conclude that the ALJ's determination that Hasley was not disabled within the meaning of the Act is supported by substantial evidence in the record. Accordingly, the decision of the ALJ is **affirmed**. Judgment shall enter in favor of the Commissioner and against Hasley.

**IT IS SO ORDERED.**
**DATED** this 17th day of March, 2016.

_____
LEONARD T. STRAND
UNITED STATES DISTRICT JUDGE